Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 17 | **DATE** | 9/29/2000 |
| **CASE TITLE** | USA vs. Masao Fujii a/k/a Yasuo Tamura | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's Motion in Limine to Admit the Statements of Material Witnesses Yan Zhu Zheng, Xie Mei Zheng, and Xiao Hong Li [73] is granted to the extent set forth below.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 0 2 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 84 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 SEP 29 PM 3: 45 | | |
| RJ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 00 CR **DOCKETED** |
| ) | |
| MASAO FUJII a/k/a YASUO TAMURA ) | OCT 0 2 2000 |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

### Background

On January 6, 2000, defendant Masao Fujii sought admission to the United States at O'Hare Airport, presenting what turned out to be a counterfeit Japanese passport. At approximately the time defendant was stopped at the airport, INS officials found three Chinese women trying to destroy their Japanese passports in the airport's public restroom. The Chinese nationals were escorted to immigration secondary for questioning where they sought political asylum and were interviewed by INS officers Sanday Conklin and Bernadette Wierzbiak regarding their admission to the United States. They were informed, "This may be your only opportunity to present information to me and the Immigration and Naturalization Service to make a decision. It is very important that you tell me the truth. If you lie or give misinformation, you may be subject to criminal or civil penalties, or barred from receiving immigration benefits or relief now or in the future." All were sworn and indicated that they would answer questions.

Chinese national Yan Zhu Zheng stated that the person who smuggled her was an American; he helped her get on the plane, took her passport after she got on the plane and

showed her where to sit. She described this American as a tall man with blue eyes and blond hair. When shown a picture of defendant Fujii and asked "Do you know this man," she responded, "No, it wasn't this man. It was an American." She indicated that she did not make the arrangements for her trip but relatives did. She refused to sign her statement. Chinese national Xie Mei Zheng admitted that she had used a Japanese passport to try to enter the United States and had destroyed that passport in the bathroom. She said she had been referred to "a tall thin guy," "a foreigner," to make arrangements to come to the United States and that her family was to pay after she got to the United States. She was shown a picture of defendant Fujii and asked, "Is the person in the picture the person who helped you into the United States?" She responded, "No I don't know him." She signed and swore to her statement, acknowledging that her answers were "true and correct." Chinese national Xiao Hong Li, when asked what documents she used to board the plane, stated, "I don't know. I did not look at it. They gave me documents and shortly before I got off the airplane I was told to destroy the documents in the toilet. It seemed to be a passport of Japan." When asked "Who assisted or arranged for you to come to the United States?," she responded, "My relatives. A good friend of my brothers [sic] knows a smuggler and he referred me to him." She indicated that the person she was referred to would not give her a name, but "[t]he person who accompanied us during the trip was a white male about 50-60 years old." When shown a picture of defendant Fujii and asked if he was the person who helped her into the United States, she responded, "No. We just saw him briefly and then he left – the man who accompanied us during the trip." She stated that the man assigned her to sit in a specific seat, but she was unable to state whether the man actually made the flight himself. When asked the cost of coming to the United States, she indicated that her family made

2

the arrangements and payment was to be made once she arrived in the United States.

All three Chinese nationals have asserted their privilege against self-incrimination to avoid testifying at trial. The assertion of privilege was uncontested by both the government and the defense and has been upheld. The government has declined to offer the Chinese nationals immunity. They are, therefore, unavailable to the defense. Moreover, once all parties agreed that the Chinese nationals had properly asserted their privilege against self-incrimination, they were released from custody, having previously been detained by the INS as material witnesses for the government. The defense has moved in limine for the admission of their statements as declarations against penal interest under Rule 804(b)(3) and additionally pursuant to Rule 807.[1]

## Analysis

The proponent of an out-of-court statement, proffered for admission under Rule 804(b)(3), bears the burden of showing that the statement qualifies for admission. *American Automotive Accessories, Inc. v. Fishman*, 175 F.3d 534, 540 (7th Cir. 1999). The Seventh Circuit uses a three-part test to determine admissibility under the rule. First, it must be shown that the declarant is unavailable. Second, the statement must be against the declarant's penal interest. Third, there must be corroborating circumstances indicating the trustworthiness of the statement. It is undisputed that the three Chinese nationals are "unavailable" to defendant Fujii.

With respect to the second requirement, the rule requires that the statement sought to be admitted be sufficiently against the declarant's penal interest that a reasonable person in the

---

[1] The defense initially moved orally for the admission of the statements under Rule 804(b)(1). The court ordered cross-briefs. In its written submission, the defense relied on the rules cited above and not Rule 804, while the government addressed the defendant's oral motion. The court has taken supplemental briefing on the Rule 804(b)(3) and Rule 807 issues.

3

declarant's position would not have made the statement unless he believed it to be true; for this reason, statements that are not self-inculpatory are inadmissible, even if made within a broader narrative that is generally self-inculpatory. *Williamson v. United States*, 512 U.S. 594, 603-04 (1994); *United States v. Nagib*, 56 F.3d 798, 804 (7th Cir. 1995). A statement satisfies the test if it would be probative in a trial against the declarant. *United States v. Garcia*, 897 F.2d 1413, 1420 (7th Cir. 1990). Each portion of a proffered out-of-court statement must be examined to determine whether it tends to subject the declarant to criminal liability. *Nagib*, 56 F.3d at 804. Each statement, to be admissible, must by "truly self-inculpatory," a standard which the Supreme Court indicated could be "a fact-intensive inquiry, which would require careful examination of all the circumstances surrounding the criminal activity involved." *Williamson*, 512 U.S. at 604.

Where the declarant's statement exculpating the defendant implicates himself, such as when the declarant's statement indicating the defendant's lack of involvement makes clear his own knowing involvement, the rule is satisfied. *See Nagib*, 56 F.3d at 804-05. Thus, in *United States v. Barrett*, 539 F.2d 244 (1st Cir. 1976), the court held that a statement suggesting the involvement of the declarant and two others in a theft – where the declarant made clear that the two others did not include the defendant – was admissible under Rule 804(b)(3). The court reasoned that, were the declarant on trial for the theft, his statement would be "important evidence" against him. Even though exculpating the defendant was not in itself against the declarant's interest (since both could have participated in the crime), the rule was still satisfied because the statement "strengthened the impression that [the declarant] had an insider's knowledge of the crimes." *Id.* at 252-53.

The government maintains that the Chinese nationals' responses to questions about who

4

helped them come to the United States do not subject them to criminal liability since the Chinese nationals are victims, not perpetrators, of the smuggling activity. But the Chinese nationals' attempted entry into the United States with fraudulent Japanese passports is a criminal offense. *See United States v. Simo,* 68 Supp.2d 706 (E.D. Va. 1999), *aff'd*, 2000 WL 1275294 (4th Cir. Sep. 8, 2000); 18 U.S.C. §§ 1543, 1544, 1546. Undoubtedly, under the circumstances here present, they could be charged with conspiracy to commit passport fraud as well. Their admissions as to the manner in which they received and attempted to use these false documents would obviously be probative against them were they to be tried for the use of the fraudulent passports, and were they tried for conspiracy, their statements identifying the individual who assisted them would be highly self-inculpatory. To this extent, the court finds the statements of the Chinese nationals to be against their penal interest. The court notes, in addition, that the government did not dispute the right of the Chinese nationals to invoke their privilege against self-incrimination if they were called by the defendant at trial.

The court has struggled with the issue of whether the Chinese nationals' denials that Mr. Fujii assisted them are adequately self-inculpatory to satisfy the rule. The case law provides little clear guidance on what, in circumstances analogous to those here, is adequately against penal interest and what is "collateral" and inadmissible. Cases like *Barrett, supra* and *United States v. Garcia,* 986 F.2d 1135 (7th Cir. 1993), support the admissibility of these statements. In *Garcia*, two individuals, Torres and Garcia, were found driving a truck in which marijuana was found. Torres confessed, stating that his only associates were his brothers and that Garcia was unaware of the marijuana in the truck. The district court rejected the evidence, finding the statement insufficiently corroborated. The court of appeals reversed. The statement in *Garcia* is closely

5

analogous to the disputed statements here. However, in *Garcia,* perhaps significantly a pre-*Williamson* case, the only issue actually decided by the court of appeals was the adequacy of corroboration; the parties did not contest, and the court of appeals did not address, whether the statement was sufficiently against the declarant's penal interest.

The government relies on *United States v. Zizzo,* 120 F.3d 1338 (7th Cir.), *cert. denied,* 522 U.S. 998 (1997). In *Zizzo,* an alleged coconspirator, prior to trial, stated that he knew only three of the persons named in the indictment but did not know the others. One of the persons not named by the coconspirator sought to offer the statement as proof that he was not a member of the conspiracy. The district court rejected the evidence and the court of appeals affirmed, ruling that an individual's remark that he knew only three of his codefendants and not others did not tend to subject him to criminal liability. *Zizzo* is distinguishable from the instant case because whether or not someone accused of conspiracy *knows* certain other people hardly incriminates him. In the case at bar, the Chinese nationals' statements do not deal with whether they *know* Fujii; they deal with whether Fujii assisted them in trying unlawfully to enter the United States.

The issue is close. The court is of the view that the Chinese nationals' statements that Fujii was not the person who assisted them have a far more attenuated connection to an admission of criminal liability than their identification of the person who did assist them; indeed, were the women on trial for any of the offenses with which they could be charged as a result of their conduct, it is hard to see how a statement that a given person did *not* help them would be admissible. For this reason, the court concludes that the Chinese nationals' description of the person who assisted them is admissible while, subject to the qualification set forth at the conclusion of this opinion, their statements indicating that Fujii was not the person are not

admissible.

Third, the court must examine whether the statements of the Chinese nationals satisfy the final condition for admissibility under Rule 804(b)(3): "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." As the Seventh Circuit has pointed out, "the precise meaning of the corroboration requirement in Rule 804(b)(3) is uncertain." *United States v. Silverstein*, 732 F.2d 1338, 1346 (7th Cir. 1984). Its purpose, however, is to exclude fabrication. *Id.* at 1347.

What stands out immediately about the Chinese nationals' statements is that all three, who were apparently questioned independently (and who do not appear, from anything in the record, to have known each other before they were smuggled), denied, when shown a photograph of Fujii, that this man assisted in their smuggling; it is the fact that the three witnesses independently and consistently denied that Fujii had assisted them that most strongly corroborates the statements. Further, their identifications of the person who assisted them, while vague (and the vagueness was consistently explained by their professed lack of contact with the smuggler[s]), are not inconsistent. Yan Zhu Zheng stated that the person who assisted her was an American who was tall and had blue eyes and blond hair. Xie Mei Zheng stated that the person who assisted her was a "foreigner," which as likely as anything means a person not of Chinese ethnicity, who was tall and thin. Xiao Hong Li stated that the person who assisted her was a white male of about 50-60 years old. While the descriptions contain too few details to be manifestly consistent, neither are they inconsistent; all three descriptions are consistent with the

smuggler being a tall, thin American, with blue eyes and blond hair, 50-60 years of age.[2]

There are other indicia of reliability in the statements of the three Chinese Nationals. All were advised of their rights and told that, in view of their asylum applications and the manner in which their asylum applications would be considered, "It is very important that you tell me the truth." All agreed to answer questions and were sworn. Nothing was said to them suggesting that they could help themselves or hurt themselves by their identification of, or failure to identify, the person who assisted them; they were simply told they must tell the truth. Two of them signed their sworn statements but one, Yan Zhu Zheng, refused to sign. With the possible exception of Yan Zhu Zheng, they forthrightly admitted their criminal conduct. Xie Mei Zheng readily admitted that she was a Chinese national and had used a Japanese passport which was destroyed in the O'Hare bathroom. Xiao Hong Li readily admitted that she made her arrangements through a "smuggler," boarded the plane with documents she was given (which she believed to be a Japanese passport) and was told to destroy the documents in the O'Hare restroom. Both Xie Mei Zheng and Xiao Hong Li expressed some desperation about their asylum applications: both indicated that if they were returned to China, they would be put in jail; Xiao Hong Li indicated she would be sterilized. Yan Zhu Zheng, who declined to sign her statement, was less

---

[2]When Xiao Hong Li was shown a picture of Fujii and asked, "Is the person in this picture the person who helped you into the United States," she answered, "No. We just saw him briefly and then he left – the man who accompanied us during the trip." The government argues from this that Xiao Hong Li admitted that she recognized Mr. Fujii. The court finds this argument, while hermeneutically creative, unconvincing, since to make this argument, the government must essentially ignore the "No" and interpret the statement as if she said "Yes, but we just saw him briefly and then he left." While Xiao Hong Li's statement arguably has a smidgeon of ambiguity in it, the government's reading strikes the court as the statement's least likely meaning. Assuming that no means no, Xiao Hong Li was at least denying that she could identify Fujii as the person who accompanied her.

8

forthcoming in admitting fraudulent conduct; she stated that she was found hiding in the O'Hare restroom "Because I had to go to the bathroom" and said she did not have her passport because "[s]omebody took my passport." She also expressed fear that if returned to China, she would be put in jail. There is no evidence that any of these individuals is a criminally-oriented person who could be expected to lie, nor does it appear that the Chinese nationals had reason to believe that the failure to identify Fujii as the smuggler, given that they admitted they were smuggled, could help their cause. Indeed, the law normally assumes that in a one-person photographic showup—which is what occurred here—the witness assumes that the authorities believe that the person pictured is the perpetrator and expect that person to be identified as the perpetrator.

The government points out that all three Chinese nationals have families left behind in China and could reasonably fear that identifying the true smuggler could lead to reprisals. But this is the only circumstance that might possibly provide a motive to lie, and that the Chinese nationals feared reprisals from the smuggler[s] is, on this record, entirely speculative. None of them indicated that they were afraid for themselves or their families; the only fear they expressed – and all expressed it – was of the Chinese government. Indeed, in the case of Xiao Hong Li, the immigration official questioned her about whether, given her own problems with the Chinese government, she had concerns about her relatives' safety. She denied having such fear. Certainly if Xiao Hong Li was falsely answering questions because of fear of reprisals from the smuggler, this question gave her an opportunity to say so. Presumably, in almost any statement exculpating a possible perpetrator, it is possible that the declarant is motivated by fear of the perpetrator. The problem is that while such a motivation is always theoretically possible, there is nothing in the record that even remotely suggests that such a motivation was at work here. *See generally*

*Garcia*, 897 F.2d at 1421 ("There is nothing in the record that indicates Carlos was motivated by a desire to curry favor with his interrogators.")

The government also argues that the Chinese nationals' statements lack corroboration because they are inconsistent with Fujii's post-arrest statement that he and a Singaporean individual named "Weng" committed the smuggling. The government misapprehends the nature of the corroboration requirement. "The corroboration that is required by Rule 804(b)(3) is not independent evidence supporting the truth of the matters asserted by the hearsay statements, but evidence that clearly indicates that the statements are worthy of belief, *based upon the circumstances in which the statements were made.*" *United States v. Barone*, 114 F.3d 1284, 1300 (1st Cir. 1997) (emphasis added); *see also United States v. Amerson*, 185 F.3d 676, 691 (7th Cir.) (dissenting opinion) ("In the law of evidence, corroboration of testimony just means that there is some evidence besides the testimony itself to indicate that the testimony is trustworthy – not that it is necessarily true, but . . . that it is sufficiently worthy of belief to have value as evidence despite the impossibility of subjecting the declarant to the fires of cross-examination. . . . For the corroboration to 'clearly' indicate the trustworthiness (though, again, not necessarily the truth) of the out-of-court statement requires a more probing inquiry, for example into the motive of the declarant to lie."), *cert. denied*, 120 S. Ct. 549 (1999). The court finds that the corroboration requirement is satisfied here.[3]

---

[3]The problem here is not really any lack of trustworthiness in the statements of the Chinese nationals. The fact that two of the Chinese nationals stated clearly that Fujii was not the man who assisted them and the somewhat ambiguous statement of the third to the same effect are corroborated to a substantial degree by the fact that the three women independently provided the same information; further, they were carefully advised that it was in their interest to tell the truth, all freely confessed to wrongdoing and there is no evidence that they were motivated to fabricate. The more likely problem with their statements, especially viewed in the light of Fujii's

The defense has also moved for the admission of the statements under Rule 807. Rule 807 permits the admission of a statement not specifically covered by the other hearsay exceptions if it has "equivalent circumstantial guarantees of trustworthiness" and is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts and its admission serves "the general purposes of these rules and the interests of justice." The statements of the three Chinese nationals stating that Fujii was not the man who assisted them were closely intertwined with admissions against their penal interest and were part of statements which the court has found to have been strongly corroborated and trustworthy. They are more probative on the point of whether Fujii assisted them than any other evidence which the defendant can procure. However, the court has expressed its reservations as to whether these statements are statements against penal interest. Moreover, as indicated above in footnote 3, the court does not know at this point how probative the statements are. Indeed, depending on the government's theory of Fujii's guilt, they may be enormously probative or hardly probative at all. Further, from a due process analysis, given that the court has ruled that the Chinese nationals' description of the man who assisted them are admissible (and the description does not remotely fit Mr. Fujii), the court is not in a position at this point to assess whether the defendant's ability to present a defense will be hampered if the witness' denial that Fujii assisted them are excluded. Accordingly, the court will reserve ruling on this portion of the Chinese nationals' statements until it has heard enough of the case to be able to assess more accurately the materiality of this evidence. *See generally United*

---

admissions, is that their knowledge may have been incomplete. Fujii may well have been involved in the smuggling, but someone else may have dealt directly with the Chinese nationals.

*States v. Rivera*, 915 F.2d 289 (7th Cir. 1990).

Accordingly, the defendant's motion is granted as to the Chinese nationals' statements describing the person who assisted them and denied, without prejudice to its renewal once the court has heard the parties' opening statements, as to the Chinese nationals' failure to identify defendant Fujii as the person who assisted them.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: September 29, 2000